**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SANTA FE SCIENCE AND TECHNOLOGY, INC.,

        Plaintiff,

vs.                                                                                                   CIV No. 02-0689 JC/LFG

DREXEL UNIVERSITY and
PROFESSOR FRANK K. KO,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court on: (1) Defendant Frank K. Ko's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Transfer Venue, filed Aug. 9, 2002 (*Doc. 8*); (2) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed Aug. 9, 2002 (*Doc. 10*); (3) Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, for Transfer of Venue, filed Aug. 9, 2002 (*Doc. 12*); (4) Defendants' Expedited Motion to Stay Briefing and Hearing of Plaintiff's Motion for a Preliminary Injunction Pending Resolution of Pending Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motions for Transfer of Venue, filed Aug. 14, 2002 (*Doc. 20*). Having reviewed the motions, memoranda, exhibits and relevant authorities, this Court finds Defendant Ko's motion (*Doc. 8)* not well taken, and it is, therefore, denied. The Court finds Defendant Drexel University's motion to dismiss for personal jurisdiction (*Doc. 10*) well taken, and it is, therefore, granted. The Court further finds Defendant Drexel University's motion to dismiss for improper venue (*Doc. 12*) moot and it is, therefore, denied. Finally, Defendants' joint motion to stay briefing (*Doc. 20*) is denied as moot.

**I.     Background**

Santa Fe Science and Technology, Inc. ("SFST") is a New Mexico corporation with its principal place of business in Santa Fe, New Mexico.  SFST developed certain intellectual property concerning the conduction of polymer fibers. In September 2000, Dr. Frank Ko, Defendant Drexel University's Professor of Materials Engineering and Director of its Fibrous Materials Research Center, met Dr. Benjamin Mattes, the President and Chief Executive Officer of SFST, when Dr. Mattes traveled to Philadelphia, Pennsylvania to deliver an address at the University of Pennsylvania. Although the parties dispute who approached whom at the conference, because all facts must be construed in favor of the non-movant, the Court will assume that Dr. Ko approached Dr. Mattes. It is undisputed, however, that the meeting resulted in the two doctors corresponding via email concerning SFST's polyaniline fiber, including several requests by Dr. Ko that SFST send him a test portion of the company's fiber to use in experiments.  Plaintiff complied with Dr. Ko's requests and provided two samples, first in October 2001 and again in February 2002.

The only subsequent meeting between Dr. Ko and Dr. Mattes occurred in October 2001, when Dr. Ko visited SFST's headquarters in Santa Fe. During this trip, the parties signed a confidentiality agreement. Several months later, in March 2002, while visiting the Drexel laboratories in Pennsylvania (Dr. Ko was in California at the time), Dr. Mattes discovered that Defendants had delivered a portion of SFST's fiber technology to another company located in Taiwan, allegedly in violation of the confidentiality agreement.  Plaintiff is now suing Defendants asserting eight claims of relief.  Defendants each bring separate motions to dismiss based on lack of personal jurisdiction.

**II.     Standard of Review**

"The Plaintiff bears the burden of establishing personal jurisdiction over the defendant."

*Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Kuenzle v. HTM Sport-Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). During this preliminary stage of litigation, a plaintiff's burden to establish personal jurisdiction over a non-resident is "light." *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). At this time, the court may consider matters outside the pleadings. *Rogers v. 5-Star Management, Inc.,* 946 F. Supp. 907, 910 (D. N.M. 1996). If "the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party...." *Id.*; *see also Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir. 1984). To overcome a plaintiff's prima facie showing, a defendant "must present a compelling case demonstrating 'that the presences of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

**III.    Discussion**

New Mexico's long-arm statute allows its courts to exercise personal jurisdiction over an out-of-state defendant. The statute provides, in pertinent part:

> "Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
> (1) the transaction of any business within this state;
> ...

>   (3) the commission of a tortious act within this state.

NMSA 1978 § 38-1-16 (1971). To determine personal jurisdiction, New Mexico courts use a three step analysis: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) plaintiff must demonstrate that the defendant's actions constituted sufficient minimum contacts with the forum state to comport with due process. *Tercero v. Roman Catholic Diocese of Norwich*, 48 P.3d 50, 54 (N.M. 2002). As courts have consistently reiterated, New Mexico's long-arm statute extends "the jurisdictional reach of New Mexico's courts as far as constitutionally permissible," such that the "transaction of any business element [and the tortious act element] of the long-arm provision [are] sufficient to fulfill the due process standard of minimum contacts...if the cause of action arises from the particular transaction of business, and the minimum contacts were purposefully initiated by the defendant." *Id.* at 55. The Court thus need only address: (1) whether Plaintiff's cause of action arises from Defendants' actions that allegedly confer jurisdiction; and (2) whether these actions establish sufficient minimum contacts with New Mexico to confer jurisdiction upon this Court. *Rogers,* 946 F. Supp. at 911; *State Farm Mut. Ins. v. Conyers,* 784 P.2d 986, 988 (1989).

     Plaintiff claims his causes of action arise from Dr. Ko and Dr. Mattes' relationship, and specifically, Dr. Ko's signing of the confidentiality agreement in New Mexico. Defendants do not contest that Dr. Ko signed the agreement, and Plaintiff has presented email correspondences from Dr. Ko to Dr. Mattes suggesting that SFST's material was shared with another company. This evidence is sufficient for a prima facie showing that there is a close relationship between the claimed transaction of business in New Mexico and the causes of action. *Rogers*, 946 F. Supp at 911. The Court thus

finds Plaintiff has met the first element.

For this Court to assume jurisdiction over an out-of-state defendant, a defendant must have certain minimum contacts with the state such that the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts apply this test in two parts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). The court must first determine whether a defendant has established sufficient minimum contacts with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the defendant has sufficient minimum contacts, the court must next ask whether "the assertion of jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476.

To establish minimum contacts, a plaintiff must demonstrate that the defendant has a connection with the forum state and has acted in such a manner that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. "When a corporation purposefully avails itself of the privilege of conducting activities within the forum state, it has clear notice that it is subject to suit there." *Id.* The New Mexico Supreme Court held that the purposeful availment test is the "key focus" when analyzing minimum contacts. *Federal Depositor Ins. Corp. v. Hiatt*, 872 P.2d 879, 882 (1994). "The test for determining whether [the plaintiff's] claims arise from [the defendants'] activities must be decided on a case by case basis." *Winward v. Holly Creek Mills, Inc.,* 493 P.2d 954, 957 (1972).

As an initial matter, Plaintiff does not dispute that Defendant Ko is a non-resident of New Mexico; that he does not own any interest in, use, rent, lease, or possess any real or personal property in the State; and he has never had any other contact with the State besides his one trip to Santa Fe, which is the subject of the dispute discussed below. Defendant Drexel asserts, and Plaintiff does not

dispute, that it is a non-profit corporation with no office or place of business in New Mexico; it does not own any interest in, use, rent, lease, or possess any real or personal property in New Mexico; or have any other continuous or systematic contacts with the State.  Plaintiff thus only may demonstrate that Drexel has the requisite minimum contacts with New Mexico if he can show an agency relationship between Dr. Ko and Drexel.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently made a prima facie showing that Defendant Ko has established minimum contacts with New Mexico. Plaintiff, however, has not demonstrated that Dr. Ko was acting as Drexel's agent, such that he had apparent authority to act on Drexel's behalf and thus subject the University to the jurisdiction of this Court.

**Defendant Ko's contacts with New Mexico**

Courts may look at various factors to help determine whether a defendant has sufficient minimum contacts with a forum state.[1] "The initiation of a transaction is an important factor in determining whether a defendant transacted business in this State." *CABA, LLC v. Mustang Software, Inc.,* 984 P.2d 803, 808 (N.M. Ct. App. 1999) (quoting *Ideal Ins. Agency v. Shipyard Marine, Inc.*, 572 N.E.2d 353, 357 (Ill. Ct. App.2d 1991)).  In *CABA*, the plaintiff claimed that New Mexico had jurisdiction over the defendant, for the defendant approached the plaintiff's representatives while in California. The court found, however, that even though the defendant approached the plaintiff, because this initial transaction occurred in California, the plaintiff failed to meet this factor. *CABA*, 984 P.2d at 808. ("The record does not indicate that Defendant did anything in this state to solicit or initiate any business transaction with Plaintiff.").  In this case, the parties dispute who approached whom at Dr.

---

[1] Although the court in *CABA* listed these factors under its New Mexico long-arm analysis, because the long-arm statute extends "the jurisdictional reach of New Mexico courts as far as constitutionally permissible," this Court will analyze the factors under its minimum contacts analysis.

Ko's and Dr. Matte's initial meeting at a conference in Pennsylvania. Yet, this dispute is not material, as the meeting occurred outside New Mexico. Thus, regardless of who approached whom, Plaintiff fails to show that Defendants initiated the business transaction in New Mexico.

A second and related factor courts may look at is the location of the performance by the defendants; "[t]he focus of the inquiry must be on the acts of the defendant to determine whether there has been a transaction of business." *Id.* at 809-10. Defendant Ko asserts, and Plaintiff concedes, that his performance primarily occurred in Pennsylvania due to the various tests he conducted at Drexel with Plaintiff's materials. Plaintiff attempts to counteract its concession by asserting that Defendants (Dr. Ko and Drexel through Dr. Ko) were to partially perform their contractual obligations in New Mexico. Yet, Plaintiff is unable to point to any such past or future acts by Defendants in the State. The Court, however, finds that this factor is overridden by Plaintiff's prima facie showing that Dr. Ko purposefully initiated his activity within New Mexico.

To further answer the question of whether a defendant has sufficient minimum contacts, a court may look at "where the transaction was entered into."*Id.* at 809. This factor is critical, as it demonstrates "the degree to which defendant purposefully initiated its activity within the State," *Customwood Mfg., Inc. v. Downey Constr. Co.*, 691 P.2d 57, 58 (N.M. 1984), and hence that he purposefully availed himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Plaintiff contends that Defendant Ko transacted business in New Mexico due to various email correspondences from Dr. Ko to Dr. Mattes. In support, Plaintiff offers evidence that Dr. Ko initiated the correspondences, and in two letters requested that Dr. Mattes send him samples of SFST's fibrous material. This evidence, however, is insufficient, as it is well settled that the "exchanges of telephone

calls and correspondences are not enough to support jurisdiction." *Id.* at 811.

Plaintiff's next argument, however, is well taken. He asserts that the transaction occurred in New Mexico due to Dr. Ko's trip to Santa Fe, where he signed a confidentiality agreement.[2] There is no dispute that Dr. Ko executed the confidentiality agreement while in New Mexico. Defendant Ko, though, argues that the confidentiality agreement is not an adequate basis to demonstrate minimum contacts with New Mexico, as the execution of a contract is not, by itself, sufficient to fit within the long-arm statute. Although Defendant's assertion is correct, *see id.* at 809, an agreement may be sufficient to comport with due process if it is the basis for the suit. *Id.* (quoting *Russey v. Rankin*, 837 F. Supp. 1103, 1105 (D.N.M. 1993) "Because [the] written correspondence is the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum, it was reasonable to have anticipated being hailed [sic] into [a] New Mexico court on claims based upon the letter.").

Plaintiff asserts that the agreement constituted the heart of the relationship, for without it, Plaintiff would not have released its confidential intellectual property. In support, Plaintiff states that, although Dr. Ko requested the confidential material prior to signing the agreement, SFST did not send anything until approximately two weeks after the parties signed it. Defendant asserts that the agreement was "incidental to the trip and was done for the limited purpose of seeing the SFST facilities and speaking about business." Mem. Brief in Support of Defendant Frank K. Ko's Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue, filed Aug. 9. 2002, at 10 (*Doc. 9*). Plaintiff's exhibits further support the argument that the

---

[2]In pertinent part, the confidentiality agreement states: "The receiving party (Recipient) shall use the Confidential Information only for purposes of evaluating Owner's products, services and any proposed business transaction. Following disclosure, Recipient shall keep confidential and not disclose the Confidential Information to any other person, firm, or corporation for a period of ten (10) years. Pl's Ex. 8.

confidentiality agreement is at the heart of this suit, including email correspondences between Dr. Mattes and Dr. Ko after SFST discovered that Dr. Ko shared the allegedly confidential materials with China Textile Institute (CTI) of Taiwan. The correspondences include Dr. Mattes telling Dr. Ko that he violated the confidentiality agreement, Pl's ex.30, and Dr. Ko apologizing for any harm that may have occurred and for "the potential damage that we may have caused you." Pl's Ex. 33.

The Court finds that the confidentiality agreement is the nucleus of the alleged wrongful acts and thus Defendant Ko should have anticipated being haled into a New Mexico court. Moreover, it is well settled that a single transaction within the forum state is sufficient to confer personal jurisdiction over a defendant. As the New Mexico Supreme Court stated: "a single transaction of business within the State can be sufficient to subject a non-resident defendant to the jurisdiction of New Mexico courts, provided that the cause of action being sued upon arises from that particular transaction of business." *Customwood Mfg., Inc., v. Downey Constr. Co., Inc.,* 691 P.2d 57, 58 (N.M. 1984).

In sum, Plaintiff makes a prima facie showing that Defendant Ko transacted business in New Mexico due to his purposeful initiation of his activity within the State. Dr. Ko's actions, including coming to New Mexico and signing a confidentiality agreement, sufficiently demonstrate that he "made a purposeful decision to participate in the local economy and to avail [himself] of the benefits and protections of New Mexico law." *Hiatt,* 872 P.2d at 882. Defendant Ko thus has established sufficient minimum contacts with New Mexico such that he reasonably could have anticipated being haled into court here.

Due to this Court's finding that Defendant Ko transacted business in New Mexico and thus has sufficient minimum contacts with the state for this Court to assert jurisdiction over him, it is now necessary to determine whether the maintenance of the suit does not "offend traditional notions of fair

play and substantial justice." *International Shoe*, 326 U.S. at 316. This Court must therefore consider: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King*, 417 U.S. at 477.

First, although there will be a burden on Defendant Ko, his burden will not be much greater than that of Plaintiff, as Plaintiff is a small local company unaccustomed to conducting business and litigation in multiple states. Second, New Mexico has a "manifest interest" in providing a forum in which its residents can seek redress for injuries caused by out-of-state actors. Third, Plaintiff is not a large company, and its resources are limited. Fourth, New Mexico seems to be an equally, if not the more efficient place to litigate the dispute. Although witnesses are located in both states, the Confidentiality Agreement was signed in New Mexico. The fifth factor does not appear to apply in this case. Upon balancing these factors, this Court concludes that the exercise of personal jurisdiction over Defendant Ko is reasonable.[3]

**Dr. Ko's relationship with Drexel University**

Although Plaintiff made a prima facie showing that Dr. Ko has sufficient minimum contacts with New Mexico, Plaintiff's evidence is not adequate to demonstrate an agency relationship between Dr. Ko and Drexel, such that his actions could be imputed upon the University for purposes of establishing minimum contacts.

"An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does

---

[3] Dr. Ko's request for a hearing is denied, as the Court finds that no further facts would alter the outcome.

some service for the principal, with or without compensation." *Tercero,* 48 P.3d at 55 (citation omitted). New Mexico's long-arm statute "provides that the actions of an agent are imputed to the principal for the purposes of personal jurisdiction." *Santa Fe Science and Technology*, 42 P.3d 1221, 1231 (N.M. Ct. App. 2001); NMSA § 38-1-16. Authority may be actual or apparent. Apparent authority exists when the third party relies upon statements or actions of the principal, not the agent. *Id.* However,

> apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent.

Restatement (Second) of Agency § 27 ("Creation of Apparent Authority: General Rule") (1952)).

Although professors may be agents of a university, *Chou v. Univ. of Chicago,* 254 F.3d 1347, 1362 (Fed. Cir. 2001), in this case, unlike *Chou* in which the university's handbook clearly stated that professors may be agents, Plaintiff fails to provide evidence of such agency. Moreover, although the parties agree that Dr. Ko is a director, Plaintiff fails to show the status and relationship of the department to Drexel. Plaintiff also does not provide evidence that his directorship is one which confers automatic agent status.

In place of such evidence, Plaintiff asserts multiple facts, which it claims led Dr. Mattes to reasonably assume that Dr. Ko was acting as Drexel's agent. At their initial meeting, Dr. Ko introduced himself to Dr. Mattes as a Professor of Drexel's Materials Engineering Department and Director of its Fibrous Materials Research Center. Pl's Resp. to Def. Drexel Univ.'s Mot. to Dismiss for Lack of Personal Jurisdiction (Pl's Resp. to Drexel's Mot.), filed Sept. 3, 2002, at 5 (*Doc. 38*). At

that meeting, Plaintiff asserts that Dr. Mattes "was given one or more Drexel business cards identifying Ko as a professor." *Id.* Also, upon signing the confidentiality agreement in Santa Fe, Dr. Ko signed it as "Frank Ko of Drexel University." *Id.* Finally, Plaintiff states that Dr. Ko represented Drexel in collaborating with Dr. Mattes in preparing a proposal to be submitted jointly by Drexel and SFST involving SFST's confidential fibers.

In contrast to Plaintiff's assertions, Drexel argues that Plaintiff has not adequately demonstrated apparent authority, for Drexel, as principal, never made any direct representations to Plaintiff. This argument is well taken, for Plaintiff's facts demonstrate that Plaintiff based its relationship on the words and actions of Dr. Ko. Several such facts, in addition to those previously mentioned, include correspondences from Dr. Ko to Dr. Mattes in which "Ko repeatedly asked Mattes, on behalf of SFST, to join Drexel and other institutions in various collaborative efforts;" Pl's Resp. to Drexel Mot. at 5-6. Dr. Mattes also testified that Dr. Ko offered to have Drexel's Fibrous Materials Research Center "attempt some braiding of [SFST's] fiber...." Pl's Ex. A at 6. Other facts include an email dated May 18, 2001, in which Dr. Ko requested that SFST send "a few square feet" of its polyaniline fabrics for "our thermal control experiments...." *Id.* at 7. Moreover, Drexel presents sworn affidavits of Carl Oxholm, Vice President and General Counsel of Drexel University; Amotz Geshury, Assistant Director of the Fibrous Materials Research Center; and Harvill C. Eaton, Provost and Senior Vice President for Academic Affairs for Drexel University, stating that there is no record that Drexel conducted business with Plaintiff, or that Dr. Ko signed a confidentiality agreement with SFST. Def's Mem. in Support of its Mot. to Dismiss for Lack of Personal Jurisdiction, filed Aug. 9, 2002, Exs. B, C, D (*Doc. 11*).

In the facts of this case, Plaintiff's reliance on Dr. Ko's actions and statements are not

sufficient to confer personal jurisdiction over Drexel, for Plaintiff made no showing that Dr. Ko's position as Director of Drexel's Fibrous Materials Research Center carried with it the generally recognized duties "to do the things ordinarily entrusted to one occupying such a position regardless of unknown limitations which are imposed upon the particular agent." Restatement (Second) of Agency § 27. Moreover, it is well established that apparent authority cannot be created by the acts of the supposed agent alone. *Ottawa Charter Bus Service v. Mollet*, 790 S.W.2d 480, 483 (Mo. App. 1990). The one sought to be held as principal must have created the appearance of authority in order to be held liable for the acts of the agent. *Id.* at 483-84. Thus, in this case, Dr. Ko's statements and his position as Director are not sufficient to confer upon him agent status, as such actions do not create the appearance of authority.

Drexel also claims that Plaintiff's reliance on Dr. Ko's statements and actions is unreasonable due to Drexel's contracting policies, which require third parties to obtain the signature of a university administration official prior to contracting with the university. Plaintiff claims this policy is unreasonable, whereas Drexel argues that it is not unreasonable, because at least fifteen other universities that perform technology commercialization post similar policies. The Court finds Drexel's argument persuasive. In this case, due to the delicate subject matter, a reasonably prudent person would have obtained assurances, such as inquiring about policies and procedures from Drexel, as principal, that Dr. Ko had apparent authority.

The Court finds that Plaintiff has not sufficiently met its burden of demonstrating that Dr. Ko had apparent authority to represent Drexel in its collaborations with SFST. This Court thus lacks jurisdiction over Drexel, as there is not sufficient evidence demonstrating that Dr. Ko was an agent for Drexel.

**Venue**

"A civil action wherein jurisdiction is founded only on diversity of citizenship may be brought only in...(2) a judicial district in which a substantial portion of the events or omissions giving rise to the claims occurred...." 28 U.S.C. § 1391(a)(2). Indeed, "district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so." David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993). Because Dr. Ko signed the confidentiality agreement in Santa Fe, New Mexico, the Court agrees with Plaintiff that venue is proper, as this contact is the basis for personal jurisdiction over Defendant Ko.

To transfer a case pursuant to 28 U.S.C. § 1404(a), the moving party bears the burden of establishing that the existing forum is inconvenient. *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 567 (10th Cir.1978). Presently, Dr. Ko has not sufficiently demonstrated that this case should be transferred to the Eastern District of Pennsylvania pursuant to § 1404 (a),[4] as he has failed to show that New Mexico is inconvenient for the witnesses and parties. Although Defendant Ko and his witnesses are located outside of this State, Plaintiff and his witnesses are within this venue. The balance of factors, thus, does not weigh heavily in favor of transfer, *see Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992), as such transfer "would succeed

---

[4] Section 1404(a) transfers must be distinguished from transfers carried out under 28 U.S.C. § 1406(a). In the case of § 1404(a), both the transferor and the transferee court have venue over the action, but it is more efficient to prosecute the action in the latter court. Conversely, in the case of § 1406(a), the transferor court lacks venue and must transfer the action in order for it to proceed.

only in shifting the inconvenience to plaintiff...." *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp.2d 1173, 1182 (D. Kan. 1998). Moreover, Plaintiff has failed to demonstrate any reason why this Court should dismiss or transfer this case pursuant to 28 U.S.C. § 1406(a).

## IV. Conclusion

Courts cannot assert jurisdiction over defendants when they have not purposefully availed themselves of the benefits and protections of the laws of the forum state. In this case, Plaintiff has made a prima facie showing that Defendant Ko has sufficient contacts with New Mexico for this Court to assert jurisdiction over him due to his trip to Santa Fe where he signed the confidentiality agreement. Plaintiff, though, fails to demonstrate that Drexel has sufficient minimum contacts with New Mexico or that there is an agency relationship between him and Drexel to confer jurisdiction over the University. Because this Court determined that: (1) Dr. Ko transacted business within the State, and (2) there is no agency relationship between Dr. Ko and Drexel, it will not review the issue of whether Defendants' acts amount to tortious conduct for purposes of New Mexico's long-arm statute.

Wherefore,

**IT IS ORDERED** that Defendant Frank K. Ko's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative to Transfer Venue, filed Aug. 9, 2002 (*Doc. 8*) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Drexel's Motion to Dismiss for Lack of Personal Jurisdiction, filed Aug. 9, 2002 (*Doc. 10*) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Drexel's Motion to Dismiss for Improper Venue, or in the Alternative, for Transfer of Venue, filed Aug. 9, 2002 (*Doc. 12*) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Defendants' Expedited Motion to Stay Briefing and Hearing of Plaintiff's Motion for a Preliminary Injunction Pending Resolution of Pending Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motions for Transfer of Venue, filed Aug. 14, 2002 (*Doc. 20*) is **DENIED AS MOOT**.

DATED December 4, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

    Michael Allison, Esq.
    Charles Fisher, Esq.
    ALLISON & FISHER P.C.
    Albuquerque, New Mexico

Attorneys for Defendant Ko:

    Lawrence S. Rosenwald, Esq.
    LAWRENCE S. ROSENWALD, P.C.
    Philadelphia, Pennsylvania

    Esteban A. Aguilar, Esq.
    AGUILAR LAW OFFICES, P.C.
    Albuquerque, New Mexico

Attorney for Defendant Drexel University:

    Luis G. Stelzner, Esq.
    SHEEHAN, SHEEHAN & STELZNER, P.A.
    Albuquerque, New Mexico